## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

EDWARD SKRUNDZ,                           )
                                          )
                    Plaintiff,            )
                                          )          CAUSE NO.: 2:05-CV-188-PS-PRC
            v.                            )
                                          )
GEORGE PABEY, Individually and in his official  )
capacity as Mayor of the City of East Chicago,  )
Indiana, and the CITY OF EAST CHICAGO,    )
a municipal corporation,                  )
                                          )
                    Defendants.           )

## OPINION AND ORDER

This matter is before the Court on a Motion to Disqualify the Law Firm of Smith & DeBonis,

LLC and Motion for Protective Order or, in the Alternative, Motion for Discovery on the Extent of

Confidential and Privileged Information Obtained in Prior Representations and Motion to Stay

Proceedings [DE 15], filed by the Defendants on July 7, 2005.  The Plaintiff filed a Memorandum

in Opposition, and the Defendants filed a Reply.

## BACKGROUND

On October 26, 2004, George Pabey won a special Democratic mayoral primary election

against Robert A. Pastrick, who had been Mayor of East Chicago ("City" or "City of East Chicago")

since January 1, 1972.  Under the administration of Mayor Pastrick, the law firm of Smith &

DeBonis, LLC ("Smith & DeBonis"), and specifically Attorney Anthony Debonis, Jr., served as the

City of East Chicago's primary outside counsel, having served in that role for 27 of the 32 years

during which Pastrick was Mayor of the City.  The firm's representation of the City included

numerous general matters as well as employment-related matters and advice on hiring practices.  In

addition, Smith & DeBonis defended the City against complaints alleging violations of civil rights

pursuant to 42 U.S.C. § 1983 and/or § 1981 in at least six actions filed from 1998 to 2004.

In November 2004, Smith & DeBonis mailed a multi-colored advertisement to all City

employees, explaining the firm's experience in civil rights litigation and the firm's willingness to

represent individuals whose civil rights have been violated.[1]  Attorney DeBonis identified the

employees to whom he sent the advertisement by asking a paralegal employed by the City to obtain

a list of all City employees with their names and addresses.  The paralegal stated in her Declaration

that Attorney DeBonis had informed her that he was going to use the list to put something together

informing the employees of their rights in case of termination.

On December 29, 2004, as the Democratic Party candidate, George Pabey defeated his

Republican challenger in the special general election for Mayor of the City of East Chicago.  Pabey

was sworn in and qualified as Mayor on December 29, 2004, and immediately took control of the

Mayor's office.

One of Mayor Pabey's initial acts as Mayor was the appointment of Nathaniel Ruff and

Carmen Fernandez as Corporation Counsel, replacing Frank Callahan who had served as

Corporation Counsel under Mayor Pastrick.  On December 30, 2004, Attorney DeBonis wrote to

Attorney Ruff, informing him that he was withdrawing from the representation of the City.  Attorney

Ruff acknowledged this letter by a letter of January 3, 2005, asking that Attorney DeBonis turn over

---

[1] The advertisement provided, in relevant part:
For years Smith & DeBonis, LLC has been actively involved in lawsuits where public employees'
First Amendment rights were violated.  Do not let your job with the government get in the way of your
First Amendment rights!  Have you or someone you know been fired or denied a promotion because
of political beliefs or because of your right to exercise free speech?  If the answer is "Yes," contact
Smith & DeBonis LLC today to set up a free consultation.
Def. Br., Exh. G.

files.  Attorney DeBonis responded in turn by letter, indicating the active matters from which he had withdrawn and claiming a retaining lien under state law on the files pending payment.  However, Attorney DeBonis' services as attorney for the East Chicago Sanitary District, a distinct governmental entity from the City, continued until his resignation on February 21, 2005, as part of a comprehensive settlement agreement with the City acting through Mayer Pabey, Attorney Ruff, and Attorney Fernandez.  As counsel for the Sanitary District, Attorney DeBonis provided advice on issues such as employee evaluations and discipline, employee salary and wage schedules, affirmative action and new employee policies, and the collective bargaining agreement.

On February 7, 2005, Attorney Fernandez wrote to Smith & DeBonis to inform the firm that the City objected on ethical grounds to Smith & DeBonis' representation of an individual (Alexius Tapia) in an action against the City.  Attorney Terrance Smith, of Smith & DeBonis, responded that there was no conflict and that the firm would continue to represent the citizens of East Chicago.

On March 5, 2005, a settlement agreement was executed in a civil action brought by Smith & DeBonis against Mayor Pabey (the City was not a named defendant) on behalf of five former Sanitary District Commissioners in connection with their dismissals by Mayor Pabey ("*Guzman* Settlement Agreement").  The *Guzman* Settlement Agreement included a provision addressing conflicts of interest by Smith & DeBonis in litigation against Mayor Pabey and provided, in relevant part:

> The City of East Chicago and its Sanitary District acknowledges that they have no information or knowledge that the District's long-time attorney, Anthony DeBonis, Jr., has engaged in representing any conflicting interests in connection with his work as Sanitary District attorney, and in connection with his occasional work as attorney for the City of East Chicago.  The said City and District waive, and shall not in the future assert, any claim of conflict of interest against Mr. DeBonis, whether known or not known, in connection with his future representation of persons with claims or causes arising after December 29, 2004, which are adverse to the City; provided,

3

however, that this waiver shall not apply, if and in the event the interest of the City or District would be compromised or jeopardized by counsel's use of any privileged or confidential information he acquired during and by means of, his former representation of either the City or the District.  By "conflict of interest" is meant those conflicts outlined, particularized and prohibited under the Indiana Rules of Professional Conduct Nos. 1.7 (especially sup-paragraph 9), and 1.9 and 1.11. Attorney DeBonis will move to withdraw his appearance in all pending East Chicago Sanitary District Litigation.

Def. Br., Exh. K.

Between April 13, 2005, and July 21, 2005, ten civil complaints, including the Complaint in this matter, were filed in state court on behalf of the Plaintiffs by Smith & DeBonis and were subsequently removed to the District Court for the Northern District of Indiana.[2]  Generally, the complaints allege violations of the Plaintiffs' civil rights by Mayor George Pabey, Charles Pacurar, and the City of East Chicago under 42 U.S.C. § 1983 in relation to the plaintiffs' termination from their employment by Mayor Pabey shortly after he took office.  The Plaintiffs allege that the terminations were motivated by political retaliation as each was a political supporter of former Mayor Pastrick.  Certain Caucasian and African-American Plaintiffs also claim race discrimination, alleging that Pabey fired them in order to replace them with Hispanic supporters.

On June 23, 2005, counsel for the Defendants sent a letter to Smith & DeBonis advising of the Defendants' belief that there were substantial grounds for moving to disqualify the firm for its representation of the Plaintiffs in these cases.  Attorney DeBonis responded that, under the circumstances, he would not discuss any matter with the Defendants  involving issues of

---

[2] The cases are *Sandra Hurubean v. George Pabey, et al.*, 2:05-cv-187-RL-APR; *Edward Skrundz v. George Pabey, et al.*, 2:05-cv-188-PS-PRC; *Lilia Ramos v. George Pabey, et al.*, 2:05-cv-189-PS-PRC; *Jose F. Valdez III v. George Pabey, et al.*, 2:05-cv-190-RL-PRC; *Kevin Knight v. George Pabey, et al.*, 2:05-cv-191-JTM-PRC; *Myria DeLaCruz v. George Pabey, et al.*, 2:05-cv-192-RL-APR; *Marcelo Garcia, et al. v. George Pabey, et al.*, 2:05-cv-217-RL-PRC; *Rosario C. Valdez v. George Pabey, et al.*, 2:05-cv-255-RL-PRC; *Dominic A. Guzman v. George Pabey, et al.*, 2:05-cv-265-RL APR; and *Arcides Santiago v. George Pabey, et al.*, 2:04-cv-282-PS-APR.

professional responsibility.  The Defendants filed a separate but essentially identical motion to disqualify in each case.

## ANALYSIS

In the motion, the Defendants seek an Order of the Court (1) disqualifying the law firm of Smith & DeBonis and its individual members from representing the Plaintiff in this case because of their prior representation of the City of East Chicago in numerous other cases and with respect to employment matters generally; (2) prohibiting Smith & DeBonis and its individual members from speaking to any plaintiff, any other law firm or individual attorney regarding the substance of the claims raised in this matter; or (3) alternatively, authorizing discovery on the extent of the confidential and privileged information obtained through the firm's prior representation of the City of East Chicago; and (4) staying proceedings pending the resolution of the issue of disqualification. The Court will address each in turn.

### A.  Motion to Disqualify

In the Motion to Disqualify, the Defendants provide three bases for the disqualification of Smith & DeBonis as attorneys for the Plaintiff: (1) with the City as a former client, Smith and DeBonis is barred from representing the Plaintiff against the City under Rule 1.9(a) and (c) because the representation in this matter is "substantially related" to Smith & DeBonis' defense of the City in other cases and in its general employment matters; (2) Smith & DeBonis' advertising to and solicitation of employees to sue the City while representing the City is a violation of Rule 1.7; and (3) Smith & DeBonis should be disqualified under Rule 1.11, which pertains to public officers or

employees.  The Defendants further assert that nothing in the *Guzman* Settlement Agreement permits Smith & DeBonis to represent the Plaintiff in this case.  Smith & DeBonis responds that none of these Rules bars its representation of the Plaintiff in this matter and that the terms of the *Guzman* Settlement Agreement authorize this representation.

The Seventh Circuit has cautioned that disqualification is a prophylactic device employed to protect the attorney-client relationship and is a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Cromley v. Board of Ed. of Lockport Township High School Dist. 205*, 17 F.3d 1059, 1066 (7th Cir. 1994) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)).  Motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment." *Freeman*, 689 F.2d at 722. However, the Seventh Circuit has instructed courts to resolve doubts in favor of disqualification. *See Exterior Sys., Inc. v. Noble Composites, Inc.*, 175 F. Supp. 2d 1112, 1115 (N.D. Ind. 2001) (citing *United States v. Goot*, 894 F.2d 231, 235 (7th Cir. 1990)).


1.  Rule 1.9

Under Northern District of Indiana Local Rule 83.5, "[t]he Rules of Professional Conduct, as adopted by the Indiana Supreme Court, and the Standards for Professional Conduct, as adopted by the Seventh Circuit, shall provide standards of conduct for those practicing in this court."  L.R. 83.5.  Turning to the Indiana Rules of Professional Conduct, Rule 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Ind. R. Prof. Cond. 1.9; *see also Jones & Henry, Engineers, Ltd. v. Town of Orland, Indiana*, 942 F. Supp. 1202, 1206 (N.D. Ind. 1996).

In addition to the Rule, the Seventh Circuit Court of Appeals has adopted a common law, three-step analysis to determine attorney disqualification. First, the Court must assess whether a "substantial relationship" exists between the subject matter of the prior and present representations. *Cromley*, 17 F.3d at 1064 (quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983) (citing *LaSalle Nat'l Bank v. Lake County*, 703 F.2d 252, 255-56 (7th Cir. 1983)); also citing *Goot*, 894 F.2d at 235; *Freeman*, 689 F.2d at 722; *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir. 1978)). To determine whether a "substantial relationship" exists between the subject matter of the prior and present representations, the Court conducts a separate three-step inquiry:

> First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

*Jones & Henry*, 942 F. Supp. at 1206 (quoting *LaSalle*, 703 F.2d at 255-56). The Seventh Circuit has elaborated that "the determination of whether there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought." *Id*. (citing *Freeman*, 689 F.2d at 722 n.10)). The purposes of the substantial relationship test are (1) to prevent disclosure of client confidences; (2) to protect a client's interest in the loyalty of counsel; and (3) to prevent the appearance of conflict of interest that is difficult to dispel in the eyes of the public, the bench, and the bar. *Exterior Sys.*, 175 F. Supp. 2d at 1116 (citing *Analytica, Inc. v. NPD Research Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983)).

7

If the Court finds that a substantial relationship does exist, then a rebuttable presumption arises that the attorney received confidential information during the prior representation and the Court engages in the final two steps of the analysis:

> If we conclude a substantial relationship does exist, we must next ascertain whether the presumption of shared confidences with respect to the prior representation has been rebutted. If we conclude this presumption has not been rebutted, we must then determine whether the presumption of shared confidences has been rebutted with respect to the present representation. Failure to rebut this presumption would also make the disqualification proper.

*Cromley*, 17 F.3d at 1064 (quoting *Schiessle*, 717 F.2d at 420 (citing *LaSalle*, 703 F.2d at 255-56); also citing *Goot*, 894 F.2d at 235; *Freeman*, 689 F.2d at 722; *Westinghouse*, 588 F.2d at 225).   In contrast, however, when an entire firm switches sides, as in the present case, once a substantial relationship has been found, it is irrebuttably presumed that counsel had access to confidential information and the firm must be disqualified.  *Analytica*, 708 F.2d at 1267; *Exterior Sys.*, 175 F. Supp. 2d at 116 (citing *Monon Corp. v. Wabash Nat'l Corp.*, 764 F. Supp. 1320, 1323 (N.D. Ind. 1991); *Flo-Con Sys., Inc. v. Servsteel, Inc.*, 759 F. Supp. 456, 459 (N.D. Ind. 1990) ("[W]here a law firm which received confidences from one client now represents a second client in a substantially related matter and those clients now oppose each other, the presumption that the confidences were shared becomes irrebuttable and the law firm must be disqualified.").

The Court must first determine whether Smith & DeBonis' prior representation of the City of East Chicago is "substantially related" to the firm's representation of the Plaintiff in this case against the City.  Unlike the facts in cases such as *Cromley* and *Schiessle*, it is not "clear" that the "substantial relationship" test is easily met in this case.  Accordingly, the Court will reconstruct the scope of the prior representation, determine whether it is reasonable to infer that attorneys in Smith & DeBonis' position would have received confidential information, and, finally, whether that

information is relevant to the present litigation. The Defendants acknowledge that Smith & DeBonis did not previously defend the City against the Plaintiff in this case in any other litigation. Consequently, Smith & DeBonis does not possess any case-specific information, confidential or otherwise, of the City of East Chicago in relation to this case.

However, the Defendants argue that the substantial relationship test has been satisfied and that the interests of Smith & DeBonis' current clients in the related cases are materially adverse to Smith & DeBonis' former client, the City of East Chicago. In support, the Defendants list the following examples of types of confidential information that Smith & DeBonis *may* have gained during its representation of the City: (1) the City's policies on employee political activity (which Smith & DeBonis drafted), (2) the City's technical defenses in prior § 1983 litigations, (3) Smith & DeBonis' extensive involvement in disciplinary and other employment matters on behalf of the City, and (4) Smith & DeBonis' knowledge of weaknesses and strengths with respect to § 1983 claims, including settlement parameters. The Defendants provide no further examples or evidence of confidential information Smith & DeBonis may or could possess.

In reconstructing the scope of Smith & DeBonis' prior representation of the City, the Court and the parties must recognize that the City, as a client, changed when Pabey became Mayor. All of the legal work performed by Smith & DeBonis with employment-related activities, including any advice given to the City on hiring practices (which includes affirmative action and minority hiring practices), evaluating and disciplining City employees, and transferring employees, related specifically to the employment actions, goals, and agendas of the Pastrick Administration. The day that Mayor Pabey was sworn in and Mayor Pastrick left office, all such actions ceased. Any advice given by Smith & DeBonis to the City via the Pastrick Administration left with the Pastrick

9

Administration.[3]  At no time did Smith & DeBonis provide any legal services or advice for Mayor Pabey, Charles Pacurar, the City of East Chicago under the administration of Mayor Pabey.  Most importantly, Attorney DeBonis and Smith & DeBonis had no role in the termination of the Plaintiff in this case and gave no advice to Attorney Pabey or the City in relation to the termination.

The Defendants propose that Smith & DeBonis has insight into the City's defense of § 1983, § 1981, or other civil rights actions.  Again, any such insight was extinguished with the transition from the Pastrick Administration to the Pabey Administration, and perhaps most obviously, with Smith & DeBonis' withdrawal from all representation of the City of East Chicago.  Once the firm ceased representation of the City, it was no longer privy to the City's current defenses and litigation strategy.  It is curious that the attorneys now representing the new Mayor of East Chicago are arguing that the former Mayor's outside counsel has special insight into *their* legal strategies in defending the new Mayor in § 1983, § 1981, or other civil rights actions.  With a new administration comes new strategies, new agendas, new politics, and new policies.  It is unlikely that these new attorneys, hired by Mayor Pabey, are following the exact defense strategies developed by the attorneys of the former Mayor–or perhaps they are–but whatever their strategies, such tactics are now outside the knowledge of Smith & DeBonis.  Any defenses Smith & DeBonis had put in place for Mayor Pastrick's defense became obsolete with Mayor Pabey's swearing in.  Any strengths or weaknesses with respect to § 1983 claims would also be administration specific, and the Defendants have not provided any examples of such knowledge that Smith & DeBonis would have from its prior representation of the City that would be applicable to the present case.  The Court is not expecting

---

[3] "Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related."  Ind. R. Prof. Cond. 1.9, comment 3.

that the Defendants provide actual examples of confidences known by Smith & DeBonis;[4] rather, the Court expects something more specific than the broad category of "strengths and weaknesses."

"[A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client." Ind. R. Prof. Cond. 1.9, comment 2.  The present case brought by Smith & DeBonis is factually distinct from the firm's prior representation of the City, even though the current case and former cases are of the same type– civil rights violations.  In addition, "[i]n the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation." *Id*., comment 3.  The Defendants have only proposed such "general knowledge of the [City's] policies and practices," which would not preclude subsequent representation, and have not provided any indication of "specific facts" gained in the prior representation of the City that are relevant to this case.

Although Attorney DeBonis had knowledge of the settlement ranges acceptable under the Pastrick Administration, even settlement ranges may change with a new Mayor, and more importantly, with changing financial times.  A new Mayor may generally have more or less tolerance for settlement depending on a number of factors; and in any given case, the Mayor's knowledge of

---

[4] Comment 3 to Rule 1.9 provides:
A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter.  A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.
Ind. R. Prof. Cond. 1.9, comment 3.

the true motivations behind the alleged illegal conduct, in this case, employment terminations, plays a significant role in the settlement determination.

Moreover, the knowledge that Attorney DeBonis had regarding these strategies and settlement ranges became part of the public record through various court proceedings, whether in litigation or motion practice.[5]   Motions to dismiss, discovery motions, motions for summary judgment, pre-trial orders, and the trial itself all would contain hints or direct statements of the City's technical defenses to civil rights actions.   In fact, any plaintiff's attorney with decades of litigation experience *against* the City under the Pastrick Administration who is now a plaintiff's attorney opposite the new Pabey Administration would possess largely the same body of general, non-case-specific knowledge that Attorney DeBonis and Smith & DeBonis gained in representing the City as outside counsel in a variety of employment and civil rights matters over a few decades under Mayor Pastrick.   Both would have similar knowledge of the City's patterns of defense and settlement but would have no specific knowledge of the facts of these cases or of the Pabey Administration's defense strategies, strengths and weaknesses, or settlement parameters.

Similarly, the ordinances, written policies, regulations, civil service rules, and collective bargaining agreement, which still had legal effect at the time Mayor Pabey took office and terminated the employment of the Plaintiffs in these cases, were all matters of public record.   Any decision Mayor Pabey took based on those policies, rules, or regulations was beyond the knowledge of Smith & DeBonis.   Moreover, any information possessed or decisions made by Mayor Pastrick and his department heads relating to hiring, employment, and termination during the Pastrick Administration have no relevance to Mayor Pabey's firings in this and the related cases, which took

---

[5] "Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying."  Ind. R. Prof. Cond. 1.9, comment 3.

place after Mayor Pastrick left office and when Smith & DeBonis no longer represented the City. Specifically, the Defendants contend that Smith & DeBonis drafted the City's policies governing political campaign activities for City employees, which the Defendants argue are implicated by allegations in all of the complaints filed by Smith & DeBonis in each of the related cases. However, Attorney DeBonis states in his Declaration that, although he did work on a draft of the City's policy on political activities by City employees, the policy was never implemented and cannot be used against the City for any purpose. Therefore, any knowledge Attorney DeBonis had of this policy is irrelevant to the case at hand.

In *Jones & Henry*, the court held that an outside attorney's prior representation of a municipality did not preclude her representation of a current client against the same municipality because the matters were not substantially related. 703 F.2d at 1208-09. The attorney first defended the town in an action by town residents to enjoin construction of a wastewater collection and treatment facility and a water distribution system ("Project"), in which the town based its defense on a lack of subject matter jurisdiction and failure to exhaust administrative remedies. *Id*. at 1204. The attorney subsequently represented Jones & Henry Engineers, Ltd. against the town in a declaratory relief action based on a contract dispute with the town related to the Project. *Id*. at 1203. In declining to disqualify the attorney, the court reasoned that the scope of the prior and present litigation did not overlap, even though both involved the Project, and that it was unlikely that the attorney learned confidential information that would satisfy the substantial relationship test in the subsequent contract matter. *Id*. at 1208-09. The court further reasoned that the fact that both matters related to the Project "misses the mark" because the attorney was involved in an injunction on jurisdictional grounds in the first case and a declaratory action on the substance of the contract in

the second. *Id*. at 1209. Finally, the court recognized that the attorney did not have supervisory authority over the defense of the injunction. *Id*.

In contrast with *Jones & Henry*, in *LaSalle*, the Seventh Circuit found that a substantial relationship existed between the prior and present representations of a former state attorney who had supervised a county's civil division and later joined a private law firm that sued the county on behalf of a developer over sewer access, challenging the validity of the agreement between the county and a village under which sewer access had been denied. 703 F.2d at 253-54. The former state attorney had been privy to discussions of the validity of similar agreements and had prepared a legal opinion about the agreement in question while working for the county. *Id*. at 254. The court held that it was reasonable to infer that the attorney had received client confidences and secrets given the small office and his overall supervisory authority. *Id*. at 256. The court in *Jones & Henry* distinguished *LaSalle*, in part, on the fact that the attorney in *LaSalle* had engaged in a strategic analysis of the very issues present in the current litigation. *See Jones & Henry*, 942 F. Supp. at 1209.

The facts of the case before this Court fall somewhere between those of *Jones & Henry* and *LaSalle*. In the present case, like in *LaSalle*, Attorney DeBonis did have supervisory authority over the cases that he defended on behalf of the City. However, unlike in *LaSalle* and similar to the facts of *Jones & Henry*, Attorney DeBonis' work for and against the City does not "overlap." Although both representations dealt with civil rights and employment matters, just as both cases in *Jones & Henry* dealt with the Project, the substantive subject matter of both representations did not overlap. Just as the attorney's representation of the injunctive matters related to the Project did not overlap with her representation in the contract matter, DeBonis' defense in civil rights actions of Mayor Pastrick's Administration does not overlap with his representation of plaintiffs alleging wrongful

14

termination by Mayor Pabey's Administration.   It is likely that DeBonis engaged in strategic analysis of Mayor Pastrick's employment decisions and his defense of civil rights cases, but those analyses play no role in the present litigation against the City under Mayor Pabey.  Although Smith & DeBonis can be seen to be "changing sides" if the City, as a party, is viewed as a static entity, it is perhaps more accurate to view Smith & DeBonis as remaining loyal to the individuals it originally represented by maintaining its political allegiance to Mayor Pastrick and his supporters.

In *Laboy v. Trujillo Panisse*, 213 F. Supp. 2d 54 (D. Puerto Rico 2002), the court was faced with similar facts in that an outside firm that had previously represented a municipality later represented sixteen plaintiffs who were former employees of the municipality and who alleged that their employment had been terminated because of their political affiliation, after a new mayor from a different political party was elected.   In declining to disqualify plaintiff's counsel, the court reasoned:

> While defendants' assertion [that counsel's former representation was of the municipality and not its officers and thus should disqualify him] might be correct in a typical garden variety of civil case, in § 1983 political discrimination cases, the very heart of the plaintiffs' allegations *always* center around the conduct of the people who run the municipality, in other words, the municipal officers.  Therefore, this particular case actually *is* contingent on the people running the municipal affairs.

*Laboy*, 213 F. Supp. at 57 (emphasis in original).   In *Laboy*, the firm that represented the plaintiffs had previously defended the municipality against claims of political discrimination under § 1983, among others.[6]  *Id.* at 58.   The court recognized that the prior cases "had to do with allegations of

---

[6] In analyzing the firm's past representation of the municipality, the court considered the firm's involvement in two prior cases.  Based on the first case, the Court determined that the firm should not be disqualified due to the timing of the attorney's representation of the municipality. *Laboy*, 213 F. Supp. 2d at 57.  Specifically, the law firm in question had taken on the prior case for the municipality only after a jury verdict had been entered and for the limited purpose of executing a judgment, thereby severely limiting its exposure to facts and confidences necessary for disqualification. *Id.*  However, the court then went on to consider the firm's representation of the municipality in a second matter, which the law firm had fully litigated on the merits.  *Id.* at 58.  The court fully analyzed the issue of the substantially related test in the context of this second case.  *Id.*

discrimination by a past, NPP municipal administration that was comprised of different people, from a different political party that the administration accused of the illegal wrongdoings in the case at bar." *Id*.  As to the question of shared confidences, the court reasoned that any shared confidences related to the prior administration's public policies would only be relevant to the later representation against the new administration if the defendants argued that the administrations shared the same public policy.[7]  *Id*.  The court in *Laboy* concluded:

> While the statute at issue might be the same, the case certainly differs in that the parties, the cause of action, the political ideologies and the public policy agendas are not the same.  Put simply, the scope of the allegations in all three cases deal with different plaintiffs and different defendants from different political parties with different political and public policy agendas, and some rather diverse causes of action.  The only information relevant to this cause of action is the intent of the Mayor regarding the dismissal of the 16 plaintiffs.  This is a far cry from the firing or illegal practices of the past mayor, from a different political party, and with a different public policy agenda.

*Id*. at 58.

The same analysis applies in the present case as set forth in detail above.  Although Smith & DeBonis previously represented the same City of East Chicago in name, it did not represent the same City in substance; the people making up the City–those that breathe life into the governmental unit–were completely different.  The administrations of Mayor Pastrick and Mayor Pabey are different political entitles with different policies and agendas.  The only information relevant to the case pending before this Court is the intent of Mayor Pabey in terminating the employment of the Plaintiff.

---

[7] The court observed that the defendants were alleging the opposite–that the administrations had different policies: "[B]y discharging the Plaintiffs, the current Mayor was attempting to correct the previous administration's illegal hiring practices."  *Laboy*, 213 F. Supp. 2d at 58.

In contrast with the *Laboy* case, the other cases cited by the Defendants in support of their position that there is a substantial relationship between the prior and current representation are distinguishable on this point–that any information learned from the prior Pastrick Administration is not relevant to the current cases brought against the Pabey Administration: *Flo-Con Sys.*, 759 F. Supp. at 460 (holding that the subject matter of the prior representation bore a substantial relationship to the subject matter of the current representation, in part, because the representations surrounded the same patent and also because the firm would have knowledge about its prior client's strategy and general patent matters); *Edwards v. Gould Paper Corp. Long Term Disability Plan*, 352 F. Supp. 2d 376, 380 (E.D.N.Y. 2005) (reasoning that the attorney had represented the prior client and current defendant, Continental Casualty Company, for many years, had full access to personnel and claims representatives, and had intimate knowledge of company procedures and policies regarding payment and settlement of disability claims; holding that the substantial relationship prong was met because the attorney had played the role of in house counsel and had gained the type of information that could be used to the disadvantage of Continental); *Avnet, Inc. v. The OEC Corp.*, 498 F. Supp. 818, 820, 822 (N.D. Ga. 1980) (disqualifying the firm representing the plaintiff that had defended one of the defendants during his prior employment with the plaintiff, holding that "[d]isqualification can also flow from an attorney's exposure in a prior representation to business methods and practices of his former client which fall short of information privileged under the attorney-client privilege" and that "[i]t is also plain that [the firm] now represents a plaintiff who is suing [a defendant] alleging that he is doing exactly the same type thing [sic] which [the firm] defended him against in the [previous] litigation"); *State ex rel. Wal-Mart Stores, Inc. v. Kortum*, 251 Neb. 805, 813 (Neb. 1997) (holding, in a case in which the former attorney for Wal-Mart was

now representing a plaintiff against Wal-Mart, that the attorney should not be disqualified because, even though the claims involved the same kind of tort, the issues were entirely dissimilar).  When read carefully, it is clear in all of these cases that the former client is the *same* entity, company, or person it was under the former representation as during the current, adverse representation.  In this important respect, these cases are not persuasive to the disposition of this motion.

Under the Seventh Circuit's disqualification analysis, the Court finds that matters in which Smith & DeBonis represented the City of East Chicago under the Pastrick Administration are not substantially related to the current litigation and that, although it is reasonable to infer that some confidential information was imparted to Attorney DeBonis during his representation of the City, the information is not relevant to the current litigation.  Therefore, the Court finds that Smith & DeBonis should not be disqualified from representing the Plaintiff in this case.

Nevertheless, the Court is respectful of the purposes of the Rules of Professional Conduct and Rule 1.9 in particular and the perception by the public and the bar of such apparent switching of representation.  While the change in administration from Mayor Pastrick to Mayor Pabey and the unrelatedness of the litigation in these pending cases to Smith & DeBonis' prior representation of the City mandates the Court's decision, the Court has not made this decision without hesitation and careful thought because, in consideration of the broader ethical implications, the appearance of propriety in these cases is not wholly clean and unblemished.

Finally, Rule 1.9(c) provides that "[a] lawyer who has formerly represented a client in a matter or whose present . . . firm has formerly represented a client in a matter shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client . . . ; or (2) reveal information relating to the representation . . . ." Ind. R. Prof. Cond. 1.9(c).  Attorney DeBonis

18

has filed an Affidavit asserting that he does not have any such information, and the Defendants have not presented any specific evidence of any violation of this Rule by Attorney DeBonis.

2.  Rule 1.7(a)

Under Indiana state law, a trial court may disqualify an attorney for a violation of the Rules of Professional Conduct that arises from the attorney's representation before the Court.  *See Cincinnati Ins. Co. V. Wills*, 717 N.E.2d 151, 154 (Ind. 1999).  Indiana Rule of Professional Conduct 1.7 provides in relevant part:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if
> > (1) the representation of one client will be directly adverse to another client; or
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Ind. R. Prof. Cond. 1.7(a).  Comment 6 to the Rule explains that "[l]oyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent." Ind. R. Prof. Conduct 1.7, comment 6.  The Defendants argue that Smith & DeBonis was barred from representing any client whose interests were adverse to the City concerning any matter while the firm represented the City, including soliciting City employees to bring civil rights lawsuits against its client with the advertisement sent out by Smith & DeBonis in November 2004.  The Defendants argue that disqualification on this basis alone is appropriate to shield the City from the breaches of ethics and confidences to which such dual representation leads.

Rule 1.7(a) contemplates concurrent, conflicting *representation*, of two clients.  In this case, Smith & DeBonis did not represent any City of East Chicago employees at the time it represented

the City.  However, Smith & DeBonis did *solicit representation* of adverse clients while representing the City.  Nevertheless, the Defendants have not provided any legal basis for extending Rule 1.7(a) to the solicitation of representation; all of the cases cited by the Defendants involved concurrent representations: *Cincinnati Insurance Company v. Wills*, 717 N.E.2d 151, 154 (Ind. 1999); *Reid v. Hoosier Health Systems, Inc.*, 825 N.E.2d 408, 411-12 (Ind. Ct. App. 2005); *Robertson v. Wittenmyer*, 736 N.E.2d 804, 806-07 (Ind. Ct. App. 2000).

As set forth above, this Court has authority to disqualify an attorney for violations of the Rules of Professional Responsibility that arise out of the attorney's representation in this case. Although a fundamental element of the proof required for the relief requested, the Defendants have not shown that the advertisements sent out in November 2004, in fact, are related to this matter.  The Defendants have not demonstrated or even argued that the Plaintiff in this case was solicited by Smith & DeBonis with the mailed advertisement while the firm represented the City.   The Declaration of the paralegal who compiled and gave to Attorney DeBonis the requested list of City employees and their addresses references "Exhibit A," described as a "true and correct copy of the e-mail and list of City of East Chicago employees sent to Smith & Debonis."  Def. Br., Exh. E, ¶ 9. However, Exhibit A was not attached to the Declaration.  Therefore, the Court cannot compare the names on the list to the name of the Plaintiff in this case.   Accordingly, there is no evidence currently before the Court linking Smith & DeBonis' act of sending out the mailing with the matters currently pending before the Court in these related cases.

Therefore, within the context of these cases and this motion only and without rendering any opinion on the judgment of Smith & DeBonis regarding this conduct or whether such action violated

the Indiana Rules of Professional Responsibility, the Court will not disqualify Smith & DeBonis for any alleged violation of Rule 1.7.

3.  Rule 1.11

Finally, Indiana Rule of Professional Conduct 1.11 provides, in relevant part:

(a)  Except as law may otherwise expressly permit, a lawyer who has formerly served as a *public officer or employee* of the government:
>    (1) is subject to Rule 1.9(c); and
>    (2) shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing to the representation.

Ind. R. Prof. Conduct 1.11(a) (emphasis added).[8]  As recognized by both parties in their recitation of the Rule, Rule 1.11 pertains only to lawyers who formerly served as a "public officer or employee of the government."  *Id*.  The parties in this case assume, without analysis, that Rule 1.11 applies to the firm of Smith & DeBonis; the Defendants also assert that Smith & DeBonis has agreed to be bound by Rule 1.11 through the *Guzman* Settlement Agreement.

However, Smith & DeBonis, and specifically Attorney DeBonis, were neither public officers nor employees of the City of East Chicago.  Rather the firm was hired as outside counsel for assistance with specific legal matters and Attorney DeBonis remained a private practitioner, not a government employee.  *See, e.g.*, ABA Formal Opinion 342 (Nov. 24, 1975) (explaining that a lawyer who remains in private practice and accepts, as one of his clients, a government agency, is

---

[8] The Defendants also cite Rule 1.11(c) and Comments 3 and 4 to Rule 1.11.  However, the Defendants have not offered any evidence or even suggested that Smith & DeBonis has confidential (as defined for the purposes of this rule) government information "about a person acquired when the lawyer was a public officer or employee" and that Smith & DeBonis is representing a private client with interests adverse to that "person."  Ind. R. Prof. Cond. 1.11(c) and comment 4.  Nor have the Defendants set forth any factual basis for an assertion that Smith & DeBonis had previously pursued a claim on behalf of the government and is now pursuing the same claim on behalf of a private citizen.  *See* Ind. R. Prof. Cond. 1.11, comment 3.

accepting private employment from the government agency); Rotunda and Dzienkowski, Legal Ethics - The Lawyer's Deskbook on Professional Responsibility § 1.11-3(a) (2005-2006 ed.); *compare State v. Romero*, 578 N.E.2d 673 (Ind. 1991) (disqualifying a former prosecuting attorney who subsequently represented a murder defendant and who had consulted with the assistant prosecutor who had tried the defendant on significant issues that were likely to be disputed at trial). The Defendants also recognize that Smith & DeBonis acted as the City's primary "outside counsel." Def. Br., p. 2.

Accordingly, Smith & DeBonis' relationship to the City of East Chicago is more accurately analyzed under Rule 1.9, and the Court will not analyze Smith & DeBonis' representation in this case under the standard for Rule 1.11.

4. *Guzman* Settlement Agreement

Smith & DeBonis argue that the waiver in the *Guzman* Settlement Agreement authorizes its representation of the Plaintiff in this and the other related cases.  In contrast, the Defendants argue that the "savings clause" in the Settlement Agreement specifically takes this cause of action outside of the waiver.  Because the Court has determined that there is no conflict of interest under Rule 1.9, the Court need not consider whether the City or Mayor Pabey waived any conflict of interest and declines to interpret the language of the settlement agreement outside the context of an actual controversy.

### B.  Motion for Protective Order

The Defendants ask that the Court enter an order prohibiting Smith & DeBonis and its individual members from speaking to any plaintiff, any other law firm, or individual attorney regarding the substance of the claims raised in this matter.  In light of the Court's denial of the Motion to Disqualify, the Court denies the Motion for Protective Order as moot.

### C.  Motion for Discovery

As alternative relief to the Motion for Disqualification and the Motion for Protective Order, the Defendants seek an Order of the Court authorizing discovery on the extent to which Attorney DeBonis and Smith & DeBonis have and use privileged and confidential information obtained in their prior representation of the City in their current representation of the Plaintiff in this case.  The Defendants argue that they have established that Smith & DeBonis is in possession of certain confidential and privileged information belonging to the City, which is substantially related to this litigation and that they should be entitled to seek discovery with respect to this information.

As addressed above, the Defendants have not established that Smith & DeBonis is in possession of any such confidential and privileged information belonging to the City, providing only a few broad categories of information, most of which became largely obsolete with the change in mayoral administration.  In addition, Attorney DeBonis has executed a Declaration stating that he does not possess any such information.  Accordingly, the Court denies the Motion for Discovery.

### D.  Motion to Stay Proceedings

Finally, the Defendants request that the Court stay these proceedings pending the resolution of the issue of disqualification.  Through the date of this ruling, the Court has postponed the scheduling conference in this matter in order that the parties not be required to plan discovery pending a ruling on the issue of disqualification.  Now that the Court has denied the Motion for Disqualification and the other relief sought by the Defendants, the Court denies as moot the Motion to Stay Proceedings.

### CONCLUSION

Based on the foregoing, the Court **DENIES** the Motion to Disqualify the Law Firm of Smith & DeBonis, LLC and Motion for Protective Order or, in the Alternative, Motion for Discovery on the Extent of Confidential and Privileged Information Obtained in Prior Representations and Motion to Stay Proceedings [DE 15].  The Court **REAFFIRMS** the telephonic scheduling conference set for **September 22, 2005 at 10 a.m.**  The parties are granted an extension of time up to and including the close of business on **September 19, 2005**, in which to file their proposed discovery plan in accordance with Federal Rule of Civil Procedure 26(f).

SO ORDERED this 13th day of September, 2005.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATE DISTRICT COURT

cc:  All counsel of record

24