# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| EDWARD SKRUNDZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:05-CV-188 JVB |
| GEORGE PABEY, individually and in his | ) |
| official capacity as Mayor of the City of | ) |
| East Chicago, Indiana, and the CITY OF EAST | ) |
| CHICAGO, INDIANA, a municipal corporation, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

**A.   Background of the Case**

In May 2003, George Pabey ran against incumbent Mayor Robert Pastrick in the Democratic primary election for Mayor of the City of East Chicago, Indiana. Mayor Pastrick defeated Pabey in the primary election and went on to win the general election. The Supreme Court of Indiana subsequently voided the primary election result on the basis of vote fraud and ordered a special Democratic primary election. *Pabey v. Pastrick*, 816 N.E.2d 1138 (Ind. 2004). On October 26, 2004, Pabey defeated Mayor Pastrick in a special Democratic primary election. Pabey ultimately won the special general mayoral election on December 28, 2004, and was sworn in as Mayor of East Chicago, on December 29, 2004.

In December 2004, Charles Pacurar was appointed by Mayor Pabey to fill the position of Controller of the City of East Chicago. Prior to his appointment, Pacurar was a member of Mayor Pabey's transition team.

James Bennett, another member of Mayor Pabey's transition team, became the City of East Chicago's financial consultant. Bennett was responsible for analyzing the City's budget and

preparing a financial plan to address the budget shortfall, which he estimated at $5 million. Bennett recommended that the number of City personnel be reduced because payroll constituted the greatest portion of the City's expenditures. Acting on Bennett's advice, Pabey determined that the City would need to lay off some of its employees to help reduce the budget deficit. Pacurar was given the task of implementing most of the layoffs and directed department heads, including Manuel Montalvo, the newly appointed department head of the City of East Chicago's Information Technology ("IT") Department, to examine that department's personnel to determine where budget cuts could be made.

On January 14, 2005, shortly after the change in administration, the Plaintiff who was a Senior Programmer with the City's IT Department, was terminated from his position. Believing that the new administration terminated him for exercising his First Amendment rights because he supported Mayor Pastrick, the Plaintiff sued Mayor Pabey and the City of East Chicago, under 42 U.S.C. § 1983. Moreover, because the Plaintiff believed he had been discriminated against by Mayor Pabey and the City of East Chicago on the basis of his race because he was replaced by a Hispanic independent contractor, he sued under 42 U.S.C. § 1981. The Defendants responded to the lawsuit claiming that the Plaintiff had been terminated as part of a city-wide employee layoff aimed at reducing the City's expenses.

This case proceeded to trial and at the close of the Plaintiff's case-in-chief and before the case was submitted to the jury, the Defendants moved for a directed verdict under Federal Rule of Civil Procedure 50. Rule 50 allows a court to enter judgment as a matter of law when the motion is first offered or to reserve judgment on the motion until after a jury has returned its verdict. The Court took the first approach and now issues this opinion and order directing a

verdict in favor of the Defendants and dismissing this case as a matter of law because the Plaintiff failed to produce sufficient evidence at trial to prove that he had been terminated in violation of the First Amendment as a result of his political affiliation with former Mayor Pastrick and on the basis of his race.

**B.     Standard under Rule 50**

A judgment as a matter of law is granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). "[T]he standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986)). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 349, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead it must ask whether any reasonable jury could find that the Plaintiff was terminated for exercising his First Amendment rights or because of his race. *Cf. Appelbaum v. Milwaukee Metro. Sewage Dist.*, 340 F.3d 573, 578-79 (7th Cir. 2003) (applying the standard in an age discrimination lawsuit).

## C. Discussion

At the close of the Plaintiff's case-in-chief, the Defendants moved for judgment as a matter of law in their favor. They claim that: (1) Plaintiff failed to produced evidence proving that he was terminated for supporting Mayor Pastrick; and (2) Plaintiff failed to produce evidence proving that he was terminated from his position as a Senior Programmer on the basis of his race.[1]

### (1) *Section Claim 1983: First Amendment*

"It is well established that hiring, firing, or transferring government employees based on political motivation violates the First Amendment, with certain exceptions for policymaking positions and for employees having a confidential relationship with a superior." *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004) (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 65, 71 n. 5 (1990); *Elrod v. Burns*, 427 U.S. 347, 367, 375 (1976)). In order to establish this type of employment discrimination, "a plaintiff must show two things: first, that the plaintiff's conduct was constitutionally protected, and second, that the protected conduct was a substantial or motivating factor in the employment decision." *Id*. (citing *Simmons v. Chi. Bd. of Educ.*, 289 F.3d 488, 495 (7th Cir. 2002); *Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir. 1998)).

"[T]he threshold question is whether the defendants even knew about the political activities" of the plaintiff. *Hall*, 389 F.3d at 762; *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992) ("In order to prove that [the defendant] was motivated by [plaintiff's] political

---

[1] The Defendants also raised a qualified immunity defense and asserted an inadequacy of proof issue as it related to Plaintiff's damages; however, in view of the Court's ruling herein, it does not need to address these issues.

4

associations, [the plaintiff] must first prove that [the defendant] knew of them."). "A disgruntled employee fired for legitimate reasons would not be able to satisfy his burden merely by showing that he carried the political card of the opposition party or that he favored the defendant's opponent in the election." *Nekolny v. Painter*, 653 F.2d 1164, 1168 (7th Cir. 1981). Thus, "[i]t is not enough to show only that the plaintiff was of a different political persuasion than the decisionmakers." *Nelms*, 153 F.3d at 818. There must be evidence demonstrating that political affiliation actually motivated the employment decision. *Hall*, 389 F.3d at 762.

At trial, the Plaintiff testified that he engaged in conduct protected by the First Amendment and was terminated as a result; or in other words, he was terminated for his political support or affiliation with Mayor Pastrick.[2] Plaintiff presented several examples of his conduct: placing a yard sign supporting the re-election of Mayor Pastrick at his home in East Chicago[3]; attending several political rallies and a golf outing in 2003 and 2004; and purchasing fundraising tickets in support of Mayor Pastrick's campaign totaling approximately several hundred dollars. However, the Plaintiff failed to establish that the Defendants knew of these alleged political activities and he was terminated for his participation in these activities.

With respect to his political activities, the Plaintiff testified that Mayor Pabey, Pacurar and Montalvo did not attend any of the political functions he attended in 2003 and 2004. On the basis of the Plaintiff's own testimony, Mayor Pabey, Pacurar and Montalvo did not know about Plaintiff's participation in those political activities supporting the re-election of Mayor Pastrick.

---

[2] In reaching this ruling, the Court assumes that the Plaintiff was not in a policymaking position and was not an employee who had a confidential relationship with a superior. *Hall*, 389 F.3d at 762. However, the Court has not made a specific ruling on this point.

[3] Plaintiff stated that he displayed a yard sign in support of former Mayor Pastrick at a home he owned in East Chicago, Indiana; however, he did not live in that home.

5

At best, the evidence established that Plaintiff and Pabey knew each other as employees of the City of East Chicago under Mayor Pastrick. Thus, while there is evidence to suggest that Plaintiff and Mayor Pabey had some limited interactions over the course of Plaintiff's twenty-two year employment with the City, these interactions were, in essence, professional interactions or associations, and not political in nature, and occurred years before the 2003 and 2004 elections.

The evidence at trial was that the City felt that it needed to save money. The evidence showed that the City was in the midst of a purported budget crisis at the outset of Mayor Pabey's administration and the City implemented a plan to reduce payroll and related expenses which culminated in positions being eliminated throughout the City.

The Court finds that the Plaintiff has failed to establish that his political activities were a substantial or motivating factor in the Defendants' decision to terminate his position as a Senior Programmer on January 14, 2005, because there is no direct or circumstantial evidence that the Defendants knew about these activities. Even assuming that the Defendants may have been aware that Plaintiff supported Mayor Pastrick while he worked for the City, the Court views the Plaintiff as "trying to make his case on a nod, a wink, and the suggestion that '*we* know what those politicians are like . . . they'd re-organize a department to get rid of someone who voted the wrong way.'" *Garrett*, 961 F.2d at 634 ("It may be easy to become cynical about politics and politicians, but public perception of political machinations, innuendo, and speculation cannot be the basis of a jury verdict-and there is nothing else in this case.") Therefore, as in *Garrett*, the evidence in this case supports nothing more than a possible nod, a wink, and the very remote suggestion or possibility that the Plaintiff might have been terminated on the basis of his political

affiliation with Mayor Pastrick. In other words, party affiliation is not enough to establish a First Amendment claim. *Nelms*, 153 F.3d at 818.

Next, even assuming that Pacurar was a policymaker for the City, the Plaintiff has also failed to establish that he was terminated as a result of an official policy. In order for a plaintiff to maintain a § 1983 claim against a municipality, "one must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002) (citing *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 691-94 (1978)). Because the Plaintiff has failed to establish that he was terminated in violation of a constitutional right, he cannot establish municipal liability on the part of the City.

Accordingly, the Plaintiff failed to establish by a preponderance of the evidence that he was terminated in violation of the First Amendment. The Defendants, therefore, are entitled to judgment as a matter of law on the Plaintiff's § 1983 claim because no reasonable jury could find for the Plaintiff on this claim. While the decision to terminate the Plaintiff's employment may have been an unwise decision, as the Plaintiff apparently was qualified and had worked for the City for more than twenty-two years, there is no evidence that the decision to terminate him was based on an illegal reason. *Garrett*, 961 F.2d at 633 (an employee can "be fired for a good reason or for no reason at all, as long as he was not fired because of his constitutionally protected activities") (citing *Perry v. Sinderman*, 408 U.S. 593, 597 (1972); *Elrod*, 427 U.S. at 361).

**(2)** *Section 1981: Race Discrimination Claim*

At trial, the Plaintiff testified that he believed that he was terminated by the Defendants because of his race (Caucasian). Plaintiff claimed that he was replaced by N.S.I., a Hispanic company owned by Eric Egipciaco, the son of Eddie Egipciaco, a former Mayor Pastrick supporter who changed his support to Mayor Pabey.[4] Plaintiff further claimed that after Mayor Pabey took office, the City's IT Department went from being twenty-five percent Hispanic to being two-thirds Hispanic (including Eric Egipciaco).

To succeed on his race discrimination claim, the Plaintiff must prove by the preponderance of the evidence that he was terminated by the Defendants because of his race, citing *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994), that is, the Plaintiff would not have been terminated had he not been Caucasian but everything else had been the same.

The Court finds, based on the evidence presented at trial, that the Plaintiff failed to prove by a preponderance of the evidence that he was terminated from his position as a Senior Programmer by the Defendants because of his race. There is no evidence that even remotely hints at the possibility that the Defendants' decision to hire Eric Egipciaco, an outside contractor, and terminate Plaintiff was for the purpose of intentionally discriminating against Plaintiff on the basis of his race. Instead, the evidence established that the Plaintiff's duties were parceled out amongst the remaining employees in the IT Department and its contractors. Furthermore, the scant statistical evidence presented by the Plaintiff at trial is meaningless and fails to establish a pattern and practice of racial discrimination by the Defendants. Therefore, Plaintiff has failed to show that he would not have been terminated from his employment had he not been Caucasian,

---

[4] Eric Egipciaco had been a Mayor Pastrick supporter and had a contract with the Pastrick administration. In the primary election, he contributed money to both campaigns.

but everything else had been the same.

Accordingly, the Plaintiff failed to establish by a preponderance of the evidence that he was terminated on the basis of his race. Therefore, the Defendants are entitled to judgment as a matter of law on the Plaintiff's § 1981 claim because no reasonable jury could find for the Plaintiff on this claim.

**D.    Conclusion**

For the foregoing reasons, the Court **GRANTS** the Defendants' motion for judgment as a matter of law because no reasonable jury could find for the Plaintiff on either of his claims. Accordingly, judgment is entered in favor of the Defendants and against the Plaintiff on his First Amendment claim brought under 42 U.S.C. § 1983, and on his race discrimination claim brought under 42 U.S.C. § 1981.

SO ORDERED on June 17, 2009.

> s /Joseph S. Van Bokkelen
> JOSEPH S. VAN BOKKELEN
> UNITED STATES DISTRICT JUDGE